**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FRANCESCA LUKIDIS-DOULIGERIS, )
)
Plaintiff, ) No. 2023 CV 4040
v. )
)
COSTCO WHOLESALE CORPORATION,)
)
Defendant. )

**DEFENDANT COSTCO WHOLESALE CORPORATION'S AMENDED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Now comes Defendant Costco Whole Corporation, by and through its attorneys, Lipe Lyons Murphy Nahrstadt & Pontikis Ltd., and Hinshaw and Culbertson LLP, moves this Court to enter Judgment as a Matter of Law on Plaintiff's Complaint. In support thereof, Defendant Costco states as follows:

## STANDARD OF REVIEW

A Motion for Judgment as a Matter of Law may be made at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a). In diversity cases, state law supplies the standard to be applied to such motions. *Jackson v. Bunge Corp*., 40 F.3d 239, 242 (7th Cir. 1994). Illinois law provides that verdicts should be directed in those cases in which all of the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand. See *Jablonski v. Ford Motor Co*., 2011 IL 110096, ¶ 88; *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494 (1967): A motion for directed verdict or a judgment notwithstanding the verdict raises a question of law as to whether, when all of the evidence is considered together with all reasonable inferences taken in the light most favorable to the plaintiffs, "there is a total failure or lack of evidence to prove any necessary element of the [plaintiff's] case.'" *Jablonski v. Ford Motor Co*.,

2011 IL 110096, ¶ 88 citing *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006).

**PERTINENT TRIAL EVIDENCE AND TESTIMONY**

The parties stipulated as uncontested fact that: Niles Costco Warehouse, located at 7311 Melvina in Niles, Illinois is 144,420 square feet; the entire Niles Costco property, including its parking lot, is 448,668 square feet; the Niles Costco serves anywhere between 4,500 to 6,000 partons each day; Costco Member Service Assistants are assigned certain zones of the store to conduct "floor walks;" the Dairy Room at the Niles Costco is included in Zone 2; during a floor walk, Costco employees are required to physically walk down each aisle, inspecting for unsafe conditions and potential hazards; they are also required to check the temperatures of the freezers and refrigerators; and if any critical issues are discovered, they must report them to management. Floor walks are conducted every hour, and employees must check a box to verify that there are no hazards. See Dkt. 163.

There is no evidence in the trial record that Costco actually knew that the orange piece was on the Dairy Room floor. There is no evidence indicating how or when the orange section came to be on the floor of the dairy room. There is no evidence that oranges or orange pieces were stored in Costco's Dairy Room. There is video evidence showing whole, unpeeled tangerines packaged and bagged <u>outside</u> Costco's Dairy Room. There is no evidence that orange pieces were sold on its premises. There is no evidence that Costco offered its patrons complimentary orange pieces as samples. There is no evidence in the record showing a pattern of Costco failing to clean spills, foodstuffs, or orange pieces in the Dairy Room or anywhere on its 455,000+ square foot premises in Niles, Illinois. There is no evidence in the record showing hazards on Costco's premises create

a pattern of dangerous conditions which are not properly removed. There is no evidence of prior falls involving orange pieces anywhere on Costco's premises.

Costco offered into evidence, without objection, DX 202 and DX 203: June 29, 2021 Daily Floor Walk Sheet recording Costco's inspection of the Dairy Room floor and Dairy Room temperature readings for the applicable time period and throughout the entire day. The Action Log Items on the Daily Floor Walk Sheet does not record any hazard in the warehouse including The Dairy Room.

All of the witnesses testified that they never saw the orange section on the floor of the dairy room before the Plaintiff's fall. No witness testified that they notified any Costco employees about an orange section on the floor or other hazard before the Plaintiff's fall.

The testimony of Member Service Assistant Mr. Candelaria, who completed the Dairy Room floor walk and inspected the area two minutes and twelve seconds before Plaintiff stepped on the orange piece, testified without contradiction that the orange section was not on the Dairy Room floor at that time and the floor was safe. After Mr. Candelaria exited the Dairy Room, during the two minute and twelve second interval period before Plaintiff stepped on the orange piece, video evidence shows approximately seven (7) Costco patrons walking without incident over the same spot where Plaintiff stepped and came down. None of these patrons exhibit any behavior that they were alerted to an orange piece on the floor, nor were any of these patrons injured.

By applying extrapolation over a one-hour period, then nearly 200 Costco patrons walked in proximity to the same spot; and by applying extrapolation to the entire day, then nearly 2000 Costco patrons passed through this same area in the Dairy Room without falling.

Immediately ahead of Plaintiff, video evidence shows Pareja pulling a flat-bed cart with empty boxes into the Dairy Room. Plaintiff is seen in the video walking behind the cart over the

same pathway. Pareja offered uncontradicted testimony that he did not see any orange piece or other hazard on the Dairy Room floor either. The video does not show Pareja turning back, looking down, or breaking stride while he pulls the cart over the same pathway Plaintiff walks just seconds later.

Finally, Plaintiff testified that she had just walked into The Dairy Room and "just flew…and slammed down." While sitting on the floor, she saw an orange section and surmised that was what caused her to slide down. Plaintiff's Complaint alleges in paragraph 19 that, after her fall, she observed a section orange that she stepped onto that was "whitish in color, blending in with the light colored floor of the store area."

**ARGUMENT**

In order to recover under a negligence theory, a plaintiff must offer evidence that establishes that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was a proximate cause of the plaintiff's injuries. *Ward v. K Mart Corp.,* 136 Ill.2d 132, 554 N.E.2d 223 (1990). Plaintiff cannot prevail on a premises liability claim unless it is established that a possessor of land "knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees." *Genaust v. Illinois Power Co.*, 343 N.E.2d 465 (Ill. 1976). Illinois courts have held that, where an invitee slips on a foreign substance, liability will be imposed on the proprietor if "(1) the substance was placed there by the negligence of the proprietor or (2) his servant knew of its presence, or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e. the proprietor had constructive notice of the substance." *Hayes v. Bailey*, 80 Ill.App.3d 1027, 1036 (Ill.App. 3 Dist., 1980); *Pavlik v. Wal-Mart Stores*, Inc., 323 Ill.App.3d 1060, 1063 (Ill.App. 1 Dist., 2001). Further, "[E]ven where there is proof that the

foreign substance was related to defendant's business, but no other evidence is offered other than the presence of the substance and the occurrence of the injury, defendant is entitled to a directed verdict…" *Olinger v. Great Atlantic & Pacific Tea Co.,* 21 Ill.2d 469, 475 (Ill. 1961).

## I. Plaintiff has not Proven that the Orange Piece Presented an Unreasonable Risk of Harm to People on Costco's Premises.

There is no evidence indicating how or when the orange section came to be on the floor of the dairy room. There is no evidence that oranges or orange pieces were stored in Costco's Dairy Room. There is video evidence showing whole, unpeeled tangerines packaged and bagged outside and not in proximity to Costco's Dairy Room. There is no evidence that orange pieces were sold on its premises. There is no evidence that Costco offered its patrons complimentary orange pieces as samples. There is no evidence in the record showing a pattern of Costco failing to clean spills, foodstuffs, or orange pieces in the Dairy Room or anywhere on its 455,000+ square foot premises in Niles, Illinois. There is no evidence in the record showing hazards on Costco's premises create a pattern of dangerous conditions which are not properly removed. There is no evidence of prior falls involving orange pieces anywhere on Costco's premises.

No less than seven (7) Costco Members walked in proximity to and over the same spot where Plaintiff stepped on an orange piece over a 2:12 period of time after Candelaria completed his floor walk and testified without contradiction there was no orange piece on the floor and it was safe. Applying extrapolation principles, nearly 200 Costco Members crossed over the same spot in the hour before Plaintiff fell, and nearly 800 Members crossed over the same spot after Costco opened at 10am on June 29, 2021.

## II. Plaintiff Presented No Evidence that Costco Caused the Orange Piece to be on the Floor in the Dairy Room.

There is no evidence that Costco had actual notice of the orange piece on the Dairy Room floor. There is no evidence how or when the orange piece came to be on the Floor in the Dairy Room. Also, the parties stipulated as fact that the video does not show how the orange piece came to be on the Floor in the Dairy Room.

### III. Plaintiff Presented No Evidence that Costco had Actual Notice or Knew of the Presence of the Orange Piece.

Plaintiff must prove that Costco had either actual or constructive notice of the alleged dangerous condition that caused Plaintiff's fall in order to prevail on her premises liability claim. The question of actual notice was previously addressed during summary judgment motion practice and this Court held that there was no evidence supporting the notion that Costco had actual notice of the orange section that Plaintiff slipped on. As such, the question of actual notice was not in dispute at the time of trial .Further, Costco notes that no new evidence that would support a claim of actual notice was presented at trial.

Three Costco employees and one third-party witness, Mary Dow, testified at trial.

Dan Lavigne, then the General Manager of the Niles Costco, did not witness Plaintiff's accident. He testified that he did not personally see the orange section in the dairy room and was not informed by any members or Costco employees of an orange section in the dairy room prior to Plaintiff's fall. Lavigne testified to how Costco conducts floor walks including Dairy Room. Lavigne estimated 7-8 Costco employees serve as Maintenance Assistants (Pareja's job) throughout the day, open to close. Lavigne described "shared responsibilities" of all Costco employees for maintenance and safety. He also testified about the information in the Costco Floor Walk Sheets and correlating Temperature Readings on June 29, 2021, showing these activities completed every hour on the hour without any hazards noted. Finally, Lavigne also testified about

the careful inspection and maintenance habits of both Candelaria and Pareja. Lavigne's testimony was uncontradicted at trial.

Sergio Candelaria, a Costco Member Services Assistant, was present in the dairy room about two (2) minutes before Plaintiff stepped on the orange piece. He testified that he inspected the Dairy Room as part of a Floor Walk and no orange piece was on the floor.

Gilardo Pareja, a Costco Maintenance Assistant, entered the dairy room *immediately prior* to Plaintiff stepping on the orange piece and testified that he did not observe an orange section until after the Plaintiff's fall.

Finally, Mary Dow, a third-party witness to Plaintiff's fall, testified that she did not see an orange section in the dairy room and, therefore, did not notify any Costco employees of an orange section in the dairy room. In addition to the aforementioned witnesses, Plaintiff testified that she never saw the orange section before her fall and did not notify any Costco employees of an orange section present on the floor of the dairy room.

In sum, all of the witnesses testified that they never saw the orange section on the floor of the dairy room before the Plaintiff's fall. No witness testified that they notified any Costco employees about an orange section on the floor or other hazard before the Plaintiff's fall. Absent any evidence or testimony to that effect, Plaintiff cannot establish that Costco had actual notice of the alleged dangerous condition.

**IV. Plaintiff Presented No Evidence that Costco had Constructive Notice or Should Have Discovered the Orange Piece.**

During the course of Plaintiff's case, there was no evidence presented as to how the orange section came to be on the floor of the Dairy Room. However, there was evidence presented that could allow the jury to infer that the orange section <u>was not</u> on the floor of the Dairy Room for more than two minutes and twelve seconds.

The Seventh Circuit has decided two premises liability cases with similar fact patterns that are instructive in analyzing the issue on constructive notice in this case. The first is *Cruz v. Costco Wholesale Corp.*, 134 F.4th 984 (7th Cir. 2025), wherein the Plaintiff alleged she slipped on a spilled smoothie in the Costco food court. The Seventh Circuit denied Costco's Motion for Summary Judgment on the grounds that the surveillance video did not show anyone spilling smoothie, nor any clean-up on the ground for the 28 minutes preceding Plaintiff's fall and a jury could reasonably infer that the condition existed for more than 28 minutes. *Id* at 988-989. The second case is *Reid v. Kohl's Dept. Stores, Inc*., 545 F.3d 479 (7th Cir. 2008)„ wherein the Plaintiff alleged that she slipped and fell on a spilled milkshake in the defendant's department store. A manager observed the area of the fall approximately ten (10) minutes prior and did not see any spilled milkshake on the ground. The Seventh Circuit found that the condition must have existed for less than ten (10) minutes and held that this was not enough time to impute constructive notice to the defendant. *Id.* at 482.

This case different from *Cruz*. Here, Costco produced approximately 24 minutes of surveillance footage preceding Plaintiff's fall. However, unlike *Cruz*, there was more than just the video evidence available to determine the length of time the alleged condition was present. Here, in addition to the video, Costco has presented testimony from Sergio Candelaria and Gildardo Pareja. Candelaria inspected the area two minutes and twelve seconds prior to Plaintiff's fall. Pareja, a Maintenance Assistant, walk over the path just seconds ahead of Plaintiff. Both Candelaria and Pareja testified without contradiction that the orange piece was not on the floor.

*Reid* is also instructive. Similar to *Reid*, a Costco employee inspected the area of Plaintiff's fall shortly before it occurred and did not observe the alleged dangerous condition. The Seventh

Circuit discussed this element in the *Cruz* opinion, noting that *Cruz* was distinguishable from *Reid* for this very reason. The *Cruz* opinion notes that the inspection of the area by the manager in *Reid* created an "outside limit" on the amount of time—i.e. 10 minutes—that the alleged dangerous condition could be present on the floor and found that 10 minutes was not sufficient to establish constructive notice. *Cruz* 134 F.4th 984 at 988.

Here, the Court need not rely solely on the surveillance footage to determine the length of time the orange section could have been present on the floor. Mr. Candelaria's testimony, the documentation of his floor walk, and the video depicting Mr. Candelaria inspecting the Dairy Room set an outside limit for how long the orange section could have been present. Dow testified that she entered the Dairy Room about one (1) minute before Plaintiff and nothing on the floor drew her attention. Pareja also testified that he walked over the same path seconds before Plaintiff—no orange piece was on the floor. The outside limit is two minutes and twelve seconds. Illinois courts have consistently ruled that such a short period of time cannot give rise to constructive notice. See *Reid; Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644 (7th Cir. 2014) (Court found no constructive notice where evidence showed puddle was only present for at least a few minutes); *Reyes v. Walmart Inc.,* No. 22 C 6157, 2025 WL 1651151 (N.D. Ill. June 11, 2025) (Court found no constructive notice where surveillance video only showed three minutes prior to accident); *Hoenig v. Menard, Inc.*, No. 24 CV 8680, 2025 WL 2976473 (N.D. Ill. Oct. 21, 2025) (Court found no constructive notice where surveillance video only showed eighty-eight seconds prior to accident). See also *Emory v. Menard* (Summary judgment granted on constructive notice; NDIL June 25, 2026); *Oliva v. Menard* (Defense verdict on constructive notice; NDIL March 2, 2026); *Elits v. Menard* (Summary judgment granted on constructive notice; CDIL December 29, 2025). Dist. *Lord v. Lowe's* (Constructive

notice issue of fact where employee rolls cart over hazard and "turns back" approximately 3 minutes before Plaintiff falls)(IN. SD. September 30, 2025); and *Walker v. Costco* (Constructive notice issue of fact where Plaintiff fell in cooler which grapes are stocked overnight and transported in the morning approximately seven (7) hours before Plaintiff's fall).

In sum, there is no evidence indicating how or when the orange section came to be on the floor of the dairy room—and the outside limit is 2:12 or less. There is no evidence that oranges or orange pieces were stored in Costco's Dairy Room. There is video evidence showing whole, unpeeled tangerines packaged and bagged outside Costco's Dairy Room. There is no evidence that orange pieces were sold on its premises. There is no evidence that Costco offered its patrons complimentary orange pieces as samples. There is no evidence in the record showing a pattern of Costco failing to clean spills, foodstuffs, or orange pieces in the Dairy Room or anywhere on its 455,000+ square foot premises in Niles, Illinois. There is no evidence in the record showing hazards on Costco's premises create a pattern of dangerous conditions which are not properly removed. There is no evidence of prior falls involving orange pieces anywhere on Costco's premises.

Further, the testimony of Mr. Candelaria, who inspected the area 2:12 before Plaintiff's fall, indicates that the orange section was not present at that time which sets the outer limit of time in which the orange section could have been present. After Mr. Candelaria exited the Dairy Room, and before Plaintiff's fall, video evidence shows approximately seven (7) Costco patrons walking upon and in proximity to Plaintiff's eventual path of travel in the Dairy Room. None of these patrons were alerted to an orange piece on the floor, nor were any of these patrons injured.

One of these patrons, Mary Dow, an independent witness, testified that she walked into the Dairy Room in proximity to Plaintiff's path of travel approximately one (1) minute before Plaintiff. Ms. Dow did not see anything including an orange piece on the Dairy Room floor. Ms. Dow was not injured. By applying extrapolation to the entire day, then hundreds of patrons passed through this same area in the Dairy Room without falling.

Immediately ahead of Plaintiff, video evidence shows Pareja pulling a flat-bed cart with empty boxes into the Dairy Room. Plaintiff is seen in the video walking behind the cart over the same pathway. Pareja testified that he did not see any orange piece or other hazard on the Dairy Room floor. The video does not show Pareja turning back or looking down while he pulls the cart over the same pathway Plaintiff is walking in the seconds before her.

Finally, Plaintiff alleges in her Complaint, at paragraph 19, that, after her fall, she observed a section orange that she stepped onto that was "whitish in color, blending in with the light colored floor of the store area." Costco does not have "magic eyeballs," and if Plaintiff saw the whitish section blending in with the light colored Dairy Floor, then Costco employees are held to same burden.

Illinois courts have held that such a short amount of time cannot impute constructive knowledge to a premises owner. Timing is important yet it's not the only factor for courts to consider in determining constructive notice. Absent any finding that Costco had actual or constructive notice of the alleged dangerous condition, Plaintiff cannot prevail on her premises liability claim against Costco. Accordingly, this undisputed evidence dictates that Costco did not have constructive notice of the alleged dangerous condition at issue in this case.

**IV. There is no evidence to support Plaintiff's claim for premises liability that Costco failed to exercise reasonable care to maintain the premises in a reasonably safe condition.**

Costco, like other premises owners in Illinois, is held to a reasonable person standard in care and maintenance of their warehouse floor. They need not be perfect or immaculate.

There is no evidence indicating how or when the orange section came to be on the floor of the dairy room. There is no evidence that oranges or orange pieces were stored in Costco's Dairy Room. There is video evidence showing whole, unpeeled tangerines packaged and bagged outside Costco's Dairy Room. There is no evidence that orange pieces were sold on its premises. There is no evidence that Costco offered its patrons complimentary orange pieces as samples. There is no evidence in the record showing a pattern of Costco failing to clean spills, foodstuffs, or orange pieces in the Dairy Room or anywhere on its 455,000+ square foot premises in Niles, Illinois. There is no evidence in the record showing hazards on Costco's premises create a pattern of dangerous conditions which are not properly removed. There is no evidence of prior falls involving orange pieces anywhere on Costco's premises.

The parties stipulated as contested fact that Niles Costco Warehouse, located at 7311 Melvina in Niles, Illinois is 144,420 square feet. The entire Niles Costco property, including its parking lot, is 448,668 square feet. The Niles Costco serves anywhere between 4,500 to 6,000 partons each day. Costco Member Service Assistants are assigned certain zones of the store to conduct "floor walks." The Dairy Room at the Niles Costco is included in Zone 2. During a floor walk, Costco employees are required to physically walk down each aisle, inspecting for unsafe conditions and potential hazards. They are also required to check the temperatures of the freezers and refrigerators. If any critical issues are discovered, they must report them to management. Floor walks are conducted every hour, and employees must check a box to verify that there are no hazards.

Costco offered into evidence, without objection, DX 202 and DX 203: June 29, 2021 Daily Floor Walk Sheet recording Costco's inspection of the Dairy Room floor and Dairy Room temperatures.

Based on all the evidence, taken in the light most favorable to Plaintiff, there is a total lack of evidence in the trial record to support Plaintiff's claim for premises liability that Costco failed to exercise reasonable care to maintain the premises in a reasonably safe condition.

## CONCLUSION

WHEREFORE Defendant Costco Wholesale Corporation, asks this Court to enter an order directing a verdict in Defendant's favor on all counts of Plaintiff's complaint. Defendant further requests any relief the Court deems reasonable and just.

Respectfully submitted,

Lipe Lyons Murphy Nahrstadt & Pontikis Ltd.

By. /s/ Amanda L. Zink

One of the attorneys for Costco Wholesale Corporation

Amanda L. Zink – alz@lipelyons.com
Kevin R. McGinn – krm@lipelyons.com
Attorney for Costco Wholesale Corporation
LIPE LYONS MURPHY NAHRSTADT & PONTIKIS LTD.
230 West Monroe Street, Suite 2260
Chicago, IL 60606
Phone: 312.448.6230

Robert J. Finley – rfinley@hinshawlaw.com
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
Phone: (312) 704-3000